UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

GREAT AMERICAN FIDELITY INSURANCE
COMPANY, an Ohio corporation, and,
GREAT AMERICAN E&S INSURANCE          CASE NO.
COMPANY, an Ohio corporation,

      Plaintiffs,

vs.

JWR CONSTRUCTION SERVICES,
INC., a Florida corporation,

      Defendant.

_____

## COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

The Plaintiffs, GREAT AMERICAN FIDELITY INSURANCE COMPANY (hereinafter "Great American Fidelity") and GREAT AMERICAN E&S INSURANCE COMPANY (hereinafter "Great American E&S"), by and through their undersigned counsel, and, pursuant to the Federal Rules of Civil Procedure, and, the Local General Rules of the United States District Court for the Southern District of Florida, hereby file this their Complaint for Declaratory Judgment and Damages upon the Defendant, JWR CONSTRUCTION SERVICES, INC., (hereinafter "JWR" or the "Insured"), and allege as follows:

### GENERAL ALLEGATIONS

### The Parties

1.    Great American Fidelity is a corporation organized and existing under the laws of the State of Ohio.   It is active and current.   It is authorized to do business in the State of Florida and it is doing business in the State of Florida, including the Southern District of Florida.   Its

principal place of business is located in Ohio.

2.      Great American E&S is a corporation organized and existing under the laws of the State of Ohio.   It is active and current.   It is authorized to do business in the State of Florida and it is doing business in the State of Florida, including the Southern District of Florida.   Its principal place of business is located in Ohio.

3.      JWR is a corporation organized and existing under the laws of the State of Florida.   It is active and current and located in Deerfield Beach, Broward County, Florida.   It is authorized to do business in the State of Florida and it is doing business in the State of Florida, including the Southern District of Florida.

<u>**Jurisdiction and Venue**</u>

4.      This is an action for a declaratory judgment and damages brought pursuant to 28 U.S.C. 2201 and 28 U.S.C. 2202.

5.      JWR is domiciled in the Southern District of Florida.   A substantial part of the events or omissions which give rise to the claims occurred in the Southern District of Florida, and, consequently, venue is proper pursuant to 28 U.S.C. 1391.

<u>**The Allegations in the Underlying Case**</u>

6.      Gulf Reflections Condominium Association, Inc. and several individual unit owners in the Gulf Reflections development located in Fort Myers, Florida filed their Class Representation Complaint for Damages (the "Complaint") against JWR in the Circuit Court for Lee County, Florida on January 27, 2010 in the cause of action captioned <u>Gulf Reflections Condominium Ass'n Inc, et. al. v. JWR Construction Services, Inc.</u>, in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, Case No. 10-CA-000371 (the

2

"Action"). A true and correct copy of the Complaint is attached hereto, made a part hereof, and, marked as Exhibit "1". The Gulf Reflections plaintiffs brought the Action on behalf of themselves "and all others similarly situated who own condominium units in the Gulf Reflections development located in Fort Myers, Florida, that were built using defective drywall." In the Complaint, the Gulf Reflections plaintiffs allege that JWR built the condominium units and the common areas of the Gulf Reflections development (the "Properties") using defective drywall that emitted levels of sulfur, methane and other volatile organic compounds, which caused corrosion of air-conditioner and refrigeration coils, copper tubing, electrical wiring, computer wiring and other household items, as well as created noxious, "rotten egg-like" odors.

7. In the Action, the Gulf Reflections plaintiffs allege five causes of action against JWR: (1) Strict Products Liability; (2) Negligence and Negligence Per Se; (3) Breach of Express Warranty; (4) Breach of Implied Warranty; and, (5) Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). In the general allegations, the Gulf Reflections plaintiffs allege that JWR acted as the general contractor for the condominium project. Specifically, the Gulf Reflections plaintiffs allege in the Complaint that JWR:

> "negligently designed, constructed, manufactured, delivered, inspected and/or sold the subject PROPERTIES with defective drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion to the air-conditioning and refrigeration units, electrical wires and copper tubes."

The Gulf Reflections plaintiffs state that the defects with the drywall were latent and existed at the time of installation regardless of the way the product was installed, maintained or painted. The Complaint is silent as to when the drywall was installed and when the damage occurred.

8. In the first cause of action for Strict Products Liability, the Gulf Reflections

plaintiffs allege that JWR was in the business of developing and mass producing condominium units in the county where the Properties were located and selling them to members of the public. It is alleged that at the time the Gulf Reflections plaintiffs purchased the Properties from JWR, the Properties were:

> "defective and unfit for the intended purpose because JWR did not construct the PROPERTIES in a workmanlike manner as manifested by . . . numerous drywall defects which have resulted in damage to the condominium units, their component parts and other property."

The Gulf Reflections plaintiffs further allege that the drywall used in the Properties was unsafe, defective and inherently dangerous.

9.     For the Negligence and Negligence Per Se causes of action in the Complaint, the Gulf Reflections plaintiffs allege that JWR had a duty to ensure that the drywall would perform as intended and it would not cause the damages described in the Complaint.     Allegedly, JWR breached that duty by failing to exercise ordinary care in the design, construction, manufacture, delivery, inspection or sale of the Properties with the defective drywall.   The Gulf Reflections plaintiffs further allege that JWR knew or should have known that the drywall was defective and would cause damage to other property; failed to warn the Gulf Reflections plaintiffs about the dangers associated with the drywall or to either recall the drywall or notify the Gulf Reflections plaintiffs when it became known that the drywall was dangerous and defective; negligently represented that the drywall was safe for its intended purpose; negligently distributed and delivered the drywall in a manner that was dangerous to its users; and improperly concealed or misrepresented information concerning reports of adverse effects of the drywall and the manufacturing date.   The Gulf Reflections plaintiffs then allege that these acts and omissions by

4

JWR violated statutes, ordinances and rules or regulations.

10.   The third cause of action for Breach of Express Warranty states that JWR expressly warranted to the Gulf Reflections plaintiffs that the Properties were safe and of acceptable quality and standards and would be "free from substantial construction defects and from defects in materials and workmanship."   The Gulf Reflections plaintiffs state that the Properties did not conform to these express warranties because the drywall used in the Properties was defective and unsafe and that the representations of JWR were false, misleading and untrue. The Gulf Reflections plaintiffs suggest they relied upon these warranties to their detriment.

11.   Similarly, in the fourth cause of action for Breach of Implied Warranty, the Plaintiffs allege that JWR impliedly warranted that the drywall was of merchantable quality, safe and fit for its ordinary use in the Properties.     Allegedly, the JWR warranties were false, misleading and inaccurate in that the drywall was defective, unsafe, unreasonably dangerous, improper, not of merchantable quality, and caused damage or injury to the Gulf Reflections plaintiffs.   The Gulf Reflections plaintiffs claim they relied upon the implied warranties of merchantability and fitness for a particular purpose to their detriment.

12.   Finally, in the fifth cause of action, the Gulf Reflections plaintiffs allege that the acts and practices of JWR violated  FDUTPA.   The Gulf Reflections plaintiffs claim that JWR misrepresented and omitted material information regarding its use of defective drywall in the Properties and failed to disclose known risks associated with the product.   The Gulf Reflections plaintiffs contend that those misrepresentations and concealments of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, and misrepresentations with the intent that others rely upon such misrepresentations and concealments in connection with

5

the sale and use of the condominium units of JWR, all in violation of FDUTPA. JWR allegedly engaged in these deceptive acts and practices as alleged in the Complaint to sell more condominium units to the public, including the Gulf Reflections plaintiffs, in violation of FDUTPA.

13.    As to all five causes of action, the Gulf Reflections plaintiffs seek as damages the following: the costs to repair and restore the Properties; the diminution in value of the Properties based on the presence of the defective drywall; the costs of expert consultants retained to determine the proper method of repairing the defects and damage; damages for loss of use of the units; moving and storage expenses while the damage is repaired; damage to appliances and electronics in the units; and, additional living expenses. Moreover, the Gulf Reflections plaintiffs seek recovery of compensatory damages, pre-and post-judgment interest, the costs of the action, attorney's fees, and disgorgement of the profits made by JWR from the sale of the Properties, and other damages and equitable relief. In the count for violation of FDUTPA, the Gulf Reflections plaintiffs also allege entitlement to punitive damages.

14.    Great American Fidelity and Great American E&S first received notice of the Action on or about February 15, 2010, when they received a copy of a Request for Production of Documents served by the Gulf Reflections plaintiffs, in which the Gulf Reflections plaintiffs requested liability insurance information from JWR. Neither Great American Fidelity nor Great American E&S received notice of service of process of the Complaint on JWR until February 24, 2010, nor did they receive a copy of the Summons and Complaint until February 25, 2010.

15.    Great American Fidelity and Great American E&S shall hereinafter, for convenience and simplicity, be collectively referred to as "Great American" or the "Insurer".

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, GRADY, ENGLISH & ALLEN, P.A.
100 N.E. THIRD AVENUE, SUITE 280, FT. LAUDERDALE, FLORIDA 33301-1176 • 954-522-3636 • 954-522-5119 FAX

## The Great American Insurance Policies

16.     Great American Fidelity issued Contracting Services Environmental Liability Insurance policy, Policy No. CSE 4884829 00 (the "First Policy") to JWR Construction Services, Inc., the Insured, 1131 Newport Center Drive West, Suite C, Deerfield Beach, Florida effective from June 4, 2008 to June 4, 2009 (the "Policy Period").   A true and correct copy of the First Policy is attached hereto, made a part hereof, and, marked as Exhibit "2".     Later, a second Contracting Services Environmental Liability Insurance policy, Policy No. CSE 4884929 01 (the "Second Policy") was issued by Great American E&S to JWR, the Insured, which covered the policy period from June 4, 2009 to June 4, 2010.  A true and correct copy of the Second Policy is attached hereto, made a part hereof, and, marked as Exhibit "3".  Both the First Policy issued by Great American Fidelity and the Second Policy issued by Great American E&S  contain the same basic policy language.   The Second Policy has fewer endorsements than the First Policy, but, none of the omitted endorsements are relevant to the Gulf Reflections plaintiffs claims. Accordingly, the First Policy and the Second Policy shall collectively be referred to as the "Policy".  Great American Fidelity and Great American E&S shall collectively be referred to as "Great American".

17.     Coverage A insures "Occurrence Contracting Services Pollution Liability."   It is the only coverage part in the Policy that applies to the allegations plead in the Complaint.  The liability limits for this coverage are $1,000,000 for each Pollution Condition and $2,000,000 in the aggregate, subject to a $10,000 Self-Insured Retention.   Any Legal Expense paid by Great American in the defense of the Action is subject to and will erode any applicable limit of liability and the Self-Insured Retention amount.

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, GRADY, ENGLISH & ALLEN, P.A.
100 N.E. THIRD AVENUE, SUITE 280, FT. LAUDERDALE, FLORIDA 33301-1176 • 954-522-3636 • 954-522-5119 FAX

18.     As to the scope of coverage, the Insuring Agreement for Coverage A - Occurrence

Contracting Services Pollution Liability in the Policy provides:

> "The Company will pay on behalf of the INSURED for LOSS, CLEAN-UP COSTS, and related LEGAL EXPENSE because of a POLLUTION CONDITION arising from CONTRACTING SERVICES or COMPLETED OPERATIONS:
>
> 1.      which the INSURED becomes legally obligated to pay as a result of CLAIM because of BODILY INJURY, PROPERTY DAMAGE or ENVIRONMENTAL DAMAGE that occurs during the POLICY PERIOD; or
>
> 2.      if, during the POLICY PERIOD:
>
>    a.      the POLLUTION CONDITION first begins; and
>
>    b.      the INSURED first discovers the POLLUTION CONDITION; and
>
>    c.      the INSURED first reports the POLLUTION CONDITION to the Company in writing."

Relevant definitions in Section II of the Policy include the following:

> "E.     CLAIM means a demand, notice or assertion of a legal right alleging liability or responsibility on the part of the INSURED, arising out of a POLLUTION CONDITION, and shall include but not be limited to lawsuits, orders, petitions or government or regulatory actions, filed against the INSURED."
>
> • • • •
>
> "G.     COMPLETED OPERATIONS means CONTRACTING SERVICES that are completed. COMPLETED OPERATIONS does not include any CONTRACTING SERVICES that have not been completed or have otherwise been abandoned. CONTRACTING SERVICES will be considered completed at the earliest of the following times:
>
> 1.      when all CONTRACTING SERVICES to be performed under the contract have been completed; or

8

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, GRADY, ENGLISH & ALLEN, P.A.

100 N.E. THIRD AVENUE, SUITE 280, FT. LAUDERDALE, FLORIDA 33301-1176 • 954-522-3636 • 954-522-5119 FAX

2.    when all CONTRACTING SERVICES to be performed at the JOB SITE have been completed; or

3.    when that portion of the CONTRACTING SERVICES has been put to its intended use by an person or entity other than another contractor or subcontractor working on the same project.

CONTRACTING SERVICES that may require further maintenance, service, correction, repair or replacement, but are otherwise complete, shall be deemed completed."

**"H.    CONTRACTING SERVICES** means any contracting services stated in the Declarations or scheduled as such onto this Policy by an endorsement issued by the Company, performed by or on behalf of the INSURED at a JOB SITE".

**"I.    COVERED LOCATION(S)** means any location(s) stated in the Declarations  or any location(s) scheduled as such onto this Policy by an endorsement issued by the Company.   COVERED LOCATION(S) does not include a JOB SITE".

• • • •

**"O.    JOB SITE** means a location at which CONTRACTING SERVICES are performed.   JOB SITE also includes real property rented or leased by the INSURED during the course of performing CONTRACTING SERVICES but only if such real property is utilized in direct support of such CONTRACTING SERVICES.    However, JOB SITE does not include any of the following.

1.    a COVERED LOCATION(S); or

2.    any location managed, operated, owned or leased by an INSURED or any subsidiary or affiliate of an INSURED, but this subparagraph 2. does not apply to a location that  is managed, operated, owned or leased solely by one or more persons or organizations that are INSUREDS only by reason of subparagraph 4. of the definition of INSURED".

• • • •

**"Q.    LOSS** means a monetary judgment, award or settlement of:

9

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, GRADY, ENGLISH & ALLEN, P.A.

100 N.E. THIRD AVENUE, SUITE 280, FT. LAUDERDALE, FLORIDA 33301-1176 • 954-522-3636 • 954-522-5119 FAX

1.      compensatory damages; or

2.      punitive, exemplary or multiplied damages, civil fines,
penalties and assessments, where insurable by law;

Because of BODILY INJURY and/or PROPERTY DAMAGE".

• • • •

"U.     **POLLUTANTS** means any solid, liquid, gaseous or thermal
pollutant, irritant or contaminant, including but not limited to smoke,
vapors, odors, soot, fumes, acids, alkalis, toxic chemicals, hazardous
substances, petroleum hydrocarbons, waste materials, including medical,
infectious and pathological wastes, legionella, electromagnetic fields,
MOLD MATTER and low-level radioactive waste and  material".

"V.     **POLLUTION CONDITION** means any one or more of the following:

1.      the discharge, dispersal, release, seepage, migration or
escape of POLLUTANTS into or upon land or structures
thereupon, the atmosphere, or any watercourse or body
of water including groundwater;

2.      the illicit abandonment of POLLUTANTS at a COVERED
LOCATION(S) provided that such abandonment was
committed by a person(s) or entity(ies) other than an
INSURED and without any knowledge by a RESPONSIBLE
PARTY;

3.      the existence of MOLD MATTER on, at, or within buildings or
Structures".

"W.     **PROPERTY DAMAGE** means:

1.      physical injury to or destruction of tangible property of third parties,
including persons or organizations that are INSUREDS only by
reason of subparagraph 4. of the definition of INSURED, including
the resulting loss of use of such property, and including the personal
property of such parties; or

2.      loss of use of such property that has not been physically injured or
destroyed; or

Katz, Barron, Squitero, Faust, Friedberg, Grady, English & Allen, P.A.
100 N.E. Third Avenue, Suite 280, Ft. Lauderdale, Florida 33301-1176 • 954-522-3636 • 954-522-5119 Fax

3.      diminution in the value of such property; or

4..     natural resource damage . . .

caused by a POLLUTION CONDITION.   However, PROPERTY DAMAGE does not include CLEAN-UP COSTS or ENVIRONMENTAL DAMAGE."

• • • •

"Y.     RESPONSIBLE PERSON means any officer, director or partner of the INSURED; the manager, foreman or supervisor of the INSURED responsible for environmental or health and safety affairs, control or compliance; or any manager of a COVERED LOCATION(S)."

The Policy further provides:

"SECTION VI.  LIMIT OF LIABILITY AND SELF-INSURED RETENTION

A.      The Limits of Liability and Self-Insured Retention shown in the Declaration and the rules below fix the most the Company will pay regardless of the number of  INSUREDS, COVERED LOCATION(S), CONTRACTING SERVICES, POLLUTION CONDITIONS, CLAIMS made, or persons or organizations making CLAIMS.

B.  For purposes of this Policy, the same or related POLLUTION CONDITIONS at any one JOB SITE where CONTRACTING SERVICES are performed, or at any one  COVERED LOCATION shall be deemed a single POLLUTION CONDITION.

• • • •

H.      Progressive, indivisible BODILY INJURY, PROPERTY DAMAGE or ENVIRONMENTAL DAMAGE over more than one POLICY PERIOD, and resulting from the same or related POLLUTION CONDITION, shall be considered to have occurred only in the POLICY PERIOD in which the first exposure to the POLLUTION CONDITION takes place.   If the date of that first exposure (1) is prior to the beginning of the Policy Period of the first Contracting Services Environmental Liability Policy issued to the INSURED by the Company, or (2) cannot be determined, then such  progressive  indivisible  BODILY  INJURY,  PROPERTY

11

DAMAGE or ENVIRONMENTAL DAMAGE shall be considered to have occurred only on the first day of the Policy Period of the first Contracting Services Environmental Liability Policy issued to that INSURED by the Company.

I.      Any LOSS, CLEAN-UP, COSTS, LEGAL EXPENSE or any other coverages afforded under this Policy or any endorsements attached hereto, incurred and reported to the Company, in writing, over more than one POLICY PERIOD, and resulting from the same or related POLLUTION CONDITION, shall be considered a single POLLUTION CONDITION.   The LOSS, CLEAN-UP COSTS, LEGAL EXPENSE or any other coverages afforded under this Policy or any endorsements attached thereto will be subject to the same Limit of Liability and Self-Insured Retention Amount(s) in effect at the time the POLLUTION CONDITION was first reported to the Company, in writing, during the POLICY PERIOD or, if applicable, the EXTENDED REPORTING PERIOD."

### Late Notice to Great American of the Occurrence Precludes Coverage for this Claim

19.    Pursuant to the Policy, there are reporting or notice requirement obligations of the Insured which are conditions precedent to coverage.    Specifically, the Policy states:

"Section VII. Reporting ...

A.    As a condition precedent to the coverage hereunder, in the event . . . a POLLUTION CONDITION is first discovered that results in a LOSS . . . written or oral notice containing particulars sufficient to identify the INSURED and all reasonably obtainable information with respect to the time, place and circumstances thereof, . . . shall be given by or for the INSURED to the Company . . . as soon as practicable. . . ."

The Complaint in the Action is silent regarding when the damage occurred to the condominium units from the alleged defective drywall.    The construction contracts between Pine Ridge Real Estate Enterprises, LLC and JWR indicate the construction of the Properties commenced in 2005 and construction was scheduled to be completed in 2007.

12

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, GRADY, ENGLISH & ALLEN, P.A.

100 N.E. THIRD AVENUE, SUITE 280, FT. LAUDERDALE, FLORIDA 33301-1176 • 954-522-3636 • 954-522-5119 FAX

20.   JWR had notice of the potentially defective drywall prior to the June 4, 2009 termination of the Policy Period of the First Policy.   The Insuring Agreement under Coverage A under either Policy is not triggered unless Property Damage occurred during the policy period of the specific policy, or,  the Pollution Condition first began during an applicable policy period and JWR first discovered and reported the Pollution Condition to Great American in writing during that policy period.   Additionally, no coverage is afforded under Coverage A unless a third party claimant seeks recovery for Property Damage caused by a  Pollution Condition arising from Contracting Services or Completed Operations, as defined by the Policy terms.   Consequently, JWR may not have provided notice to the Insurer containing the particulars mandated by the Policy reporting provisions as soon as practicable after JWR first discovered the alleged Pollution Condition that may result in a loss.   As such, if notice to the Insurer was late, coverage shall be barred.

### Policy Exclusions Bar Coverage for Defense and Indemnity for this Claim

21.   Furthermore, even if coverage may be provided under the Insuring Agreement, which Great American disputes, the coverage is nevertheless subject to exclusions stated in the Policy.   The Policy provides for various exclusions to coverage, seven (7) of which may bar coverage of JWR for defense and indemnity for any loss incurred by JWR in the Action.

23.   Products Liability Exclusion:   The Policy contains an exclusion for Products Liability which states:

> "This Insurance does not apply to any LOSS, CLEAN-UP COSTS, LEGAL EXPENSE or other coverage afforded under this Policy or any endorsement issued by the Company:

> • • • •

13

17. Products Liability

> based upon or arising out of goods or products manufactured, sold, handled, distributed, altered or repaired by the INSURED or others trading under the INSURED's name, including any container thereof, any failure to warn, or any reliance upon a representation or warranty made at any time with respect thereto.   This exclusion does not apply to such goods or products while they remain with the legal boundaries of a COVERED LOCATION(S)."

This exclusion bars coverage for the claims asserted in the Complaint for damages arising out of goods or products, including the drywall on the Properties, that were manufactured, sold, handled, distributed, altered or repaired by JWR or others trading under its name, including the claims for failure to warn and breach of express and implied warranties.

23. <u>Faulty Workmanship/Own Work:</u>  Exclusion 6 in the Policy states:

> "This Insurance does not apply to any LOSS, CLEAN-UP COSTS, LEGAL EXPENSE or other coverage afforded under this Policy or any endorsement issued by the Company:

* * * *

6. Faulty Workmanship/Own Work

> based upon or arising out of the costs to repair or replace faulty workmanship, construction, fabrication, installation, assembly or remediation if such faulty workmanship, construction, fabrication, installation, assembly or remediation was performed in whole or in part by an INSURED."

To the extent the damages sustained by the Gulf Reflections plaintiffs arose out of faulty workmanship, construction, fabrication, installation, assembly or remediation by JWR, then the Faulty/Workmanship/Own Work exclusion bars coverage for the costs to repair or replace such faulty workmanship, construction, fabrication, installation, assembly or remediation.

24. <u>Intentional Acts:</u>  The Policy contains an Intentional Acts exclusion which

14

provides:

> "This Insurance does not apply to any LOSS, CLEAN-UP COSTS, LEGAL EXPENSE or other coverage afforded under this Policy or any endorsement issued by the Company:
>
> * * * *
>
> 10.   Intentional Acts
>
>    based upon or arising out of a POLLUTION CONDITION that results from any RESPONSIBLE PERSON's intentional disregard of, or deliberate, willful, or dishonest non-compliance with, any statute, regulation or ordinance, administrative complaint, notice letter, or instruction by or on behalf of any government agency or representative."

Based on Exclusion 10, no coverage is provided for loss based upon or arising out of the intentional disregard, or deliberate, willful or dishonest non-compliance by JWR with any statute, ordinance or regulation.     Without limitation, Exclusion 10 may bar coverage for any loss based upon or arising out of any or all of the allegations in the Complaint regarding Negligence Per Se and violation of the FDUPTA.

25.   <u>Known Conditions:</u>   Exclusion 11 of the Policy states:

> "This Insurance does not apply to any LOSS, CELAN-UP COSTS, LEGAL EXPENSE or other coverage afforded under this Policy or any endorsement issued by the Company:
>
> • • • •
>
> "11.   Known Condition(s)
>
>    based on or arising out of any POLLUTION CONDITION that was known by or reported to any RESPONSIBLE PERSON, but was not expressly reported in writing to the Company, before
>
>    (a)   the beginning of the POLICY PERIOD (as respects a POLLUTION CONDITION at any COVERED LOCATION(S), or arising out of any CONTRACTING

15

SERVICES, shown in the Declarations at the beginning of
the POLICY PERIOD),

\* \* \* \*

Any such expressly reported POLLUTION CONDITION which is
not otherwise excluded under this Policy by endorsement is deemed
to be first discovered on the date the COVERED LOCATION(S) or
CONTRACTING SERVICES, as applicable, were added to this
Policy."

Exclusion 11 bars coverage for any liability based upon an alleged Pollution Condition that was

known by or reported to any Responsible Person of JWR, but, which was not expressly reported in

writing to Great American before the beginning of the Policy Period on June 4, 2008.

26.    Prior Claims:   The Policy contains a Prior Claims exclusion, which states:

"This insurance does not apply to any LOSS, CLEAN-UP COSTS, LEGAL
EXPENSE or other coverage afforded under this Policy or any endorsement
issued by the Company:

\* \* \* \*

16.    Prior Claims

based upon or arising out of any CLAIM reported under any
insurance policy that was both (a) in effect before the beginning of
the Policy Period shown in the Declarations and (b) issued by an
entity other than the Company."

If a claim for the damages alleged in the Complaint was reported to another insurer under an

insurance policy it issued and which was in effect before the beginning of this Policy Period, then,

this exclusion would bar coverage for this alleged loss and the alleged damages asserted by the

Gulf Reflections plaintiffs in the Complaint.

16

27.   <u>Separately Insured Project</u>:   Exclusion 21 of the Policy states:

"This Insurance does not apply to any LOSS, CLEAN-UP COSTS, LEGAL EXPENSES or other coverage afforded under this Policy or any endorsement issued by the Company:

* * * *

21.   Separately Insured Project

based upon or arising out of any CONTRACTING SERVICES, JOB SITE, or project that is insured under a valid and collectible project-specific insurance policy, owner protective insurance policy, owner-controlled insurance policy, contractor-controlled insurance policy, wrap-up policy, or similar insurance program, under which an INSURED is covered.   This exclusion does not apply where the Company specifically schedules such project as an insured project in an endorsement attached to the Policy."

This exclusion may apply to bar or limit coverage for this alleged loss and the alleged damages asserted by the Gulf Reflections plaintiffs in their Complaint in the Action.

28.   <u>Warranties</u>:   The Policy also contains an exclusion that bars coverage for express warranties.  It states:

"This Insurance does not apply to any LOSS, CLEAN-UP COSTS, LEGAL EXPENSE or other coverage afforded under this Policy or any endorsement issued by the Company:

* * * *

24.   Warranties

based upon or arising out of any express warranty or guarantee. This exclusion does not apply to a warranty or guarantee by the INSURED that its CONTRACTING SERVICES conform to generally accepted standards."

The Gulf Reflections plaintiffs allege causes of action against JWR in the Action for Breach of Express Warranty and Breach of Implied Warranty that the Properties were safe and of acceptable

17

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, GRADY, ENGLISH & ALLEN, P.A.

100 N.E. THIRD AVENUE, SUITE 280, FT. LAUDERDALE, FLORIDA 33301-1176 • 954-522-3636 • 954-522-5119 FAX

quality and standards and that the condominium units would be free from substantial construction defects and from defects in materials and workmanship.   The Gulf Reflections plaintiffs allege JWR breached these warranties because the drywall used in the Properties was defective and unsafe.   Therefore, Exclusion 24 may apply to bar coverage for the damages claimed in the Action for breach of warranty that do not relate to the conformance to generally accepted standards.

29.     In addition to these seven (7) exclusions which bar coverage, the Policy contains two (2) other provisions which bar or limit coverage.

30.     <u>No Coverage for Punitive Damages</u>: The definition of Loss, as set forth above, includes "punitive, exemplary or multiplied damages, civil fines, penalties and assessments, where insurable by law."   However, punitive damages generally are not insurable in Florida or New York as a matter of public policy.   Thus, no coverage is afforded under the Policy for any award of punitive or exemplary damages against JWR as pled in the fifth cause of action in the Complaint in the Action.

31.     <u>Other Insurance</u>:  With regard to the duty to defend and indemnify, Section IX.I. of the Policy, "Other Insurance," states in pertinent part that:

> "This insurance shall apply only in excess of the sum of the Self-Insured
> Retention amount stated in the Declarations and the applicable limits of any
> other valid and collectible insurance available to the INSURED, whether
> such other insurance is stated to be primary, pro rata, contributory, excess,
> contingent or otherwise, unless such other insurance is written only as
> specific excess insurance over the applicable Limits of Liability of this
> Policy."

18

JWR is insured under several other liability policies that may provide primary indemnity and defense coverage for the alleged loss alleged in the Action, including Commercial General Liability policies issued by Amerisure Insurance Company to JWR and Commercial General Liability policies issued by Old Dominion Insurance Company.  True and correct copies of the Amerisure policies are attached hereto, made a part hereof, and, marked as Exhibit "4".  JWR is also an additional insured under policies issued to the subcontractor who performed the drywall scope of work at Gulf Reflections.  It may be an insured or additional insured under policies issued to the developer of Gulf Reflections.  If these policies provide coverage, then, the liability policies issued by Amerisure, Old Dominion and the additional insured policies and policies issued to the developer are primary to the First Policy and the Second Policy which, as a result, only provide excess coverage.  As excess insurers, neither Great American Fidelity nor Great American E&S has a duty to defend or indemnify the insured, JWR, until the limits of insurance of the underlying policies are exhausted.

### The Demands of JWR for a Defense

32.     The underlying lawsuit was filed on or about January 27, 2010.  JWR, through its counsel, demanded that Great American provide JWR with a defense based upon the allegations in the Complaint.

33.     Great American responded through counsel, and, Great American stated it had no duty to defend JWR under any policy of insurance.   However, with a full reservation of rights, Great American has tendered a defense to JWR in the Action at least until this Court determines the issue of coverage.

34.     As part of that reservation of rights, Great American insisted that Great American

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, GRADY, ENGLISH & ALLEN, P.A.

100 N.E. THIRD AVENUE, SUITE 280, FT. LAUDERDALE, FLORIDA 33301-1176 • 954-522-3636 • 954-522-5119 FAX

would seek reimbursement from JWR of attorney's fees, costs, and, expenses Great American incurred in the defense of JWR in the Gulf Reflections Action to the extent permitted by law if it was later determined that no coverage or defense obligations exist under the Policy for the claims and damages sought in the Gulf Reflections Action. Great American also insisted upon reimbursement from JWR of any payment or settlement funded in whole or part by Great American on behalf of JWR for the Gulf Reflections Action to the extent that those payments were made with respect to claims for which it is determined there is no coverage.

35.     Specifically, the reservation of rights letter dated March 19, 2010 sent to JWR states that Great America reserves its rights to:

"3.     Seek reimbursement for any costs, expenses or legal fees incurred in the defense of JWR Construction upon a showing that such costs, expenses or fees were incurred with respect to claims for which no coverage obligations applied and/or no obligation to defend existed;

4.     Seek reimbursement of any judgment or settlement funded in whole or in part by [Great American] on behalf of JWR Construction upon a showing that such payments were made with respect to claims for which no coverage is provided."

A true and correct copy of the reservation of rights letter dated March 19, 2010 is attached hereto, made a part hereof, and, marked as Exhibit "5".

### Conditions Precedent

36.     All conditions precedent to the institution of this action have been performed, occurred, or were waived.

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, GRADY, ENGLISH & ALLEN, P.A.
100 N.E. THIRD AVENUE, SUITE 280, FT. LAUDERDALE, FLORIDA 33301-1176 • 954-522-3636 • 954-522-5119 FAX

COUNT I

**DECLARATORY JUDGMENT AS TO THE FIRST POLICY**
**<u>ISSUED BY GREAT AMERICAN FIDELITY TO JWR</u>**

37.    Great American Fidelity realleges and incorporates herein by reference the General Allegations.

38.    Great American Fidelity insists that the First Policy does not require Great American Fidelity to either defend or indemnify JWR for the claims made by the Gulf Reflections plaintiffs in the Action.  JWR has a contrary interpretation of the duties and responsibilities of Great American Fidelity under the First Policy.

39.    As a result of the dispute between Great American Fidelity and JWR, there is a controversy as to the rights, duties and status of Great American Fidelity regarding its obligations, duties and responsibilities under the First Policy to defend JWR in the Action and indemnify JWR for Loss, if any, it may incur as a result of the claims made in the Action.   Consequently, Great American Fidelity is entitled to a construction of the First Policy of insurance and a determination of its rights under the First Policy.

WHEREFORE, based on the above, the Plaintiff, GREAT AMERICAN FIDELITY INSURANCE COMPANY, respectfully requests that this Court take jurisdiction of the subject matter and issue a Final Judgment which determines that pursuant to the First Policy, GREAT AMERICAN FIDELITY INSURANCE COMPANY was not and is not required to provide coverage for or to pay any portion of the losses, clean up costs or legal expense incurred by JWR CONSTRUCTION SERVICES, INC.  in the Gulf Reflections Action.   GREAT AMERICAN

21

FIDELITY INSURANCE COMPANY further requests that this Court enter final judgment against JWR CONSTRUCTION SERVICES, INC. for any and all settlement sums, judgments, attorneys fees, costs and expenses it incurred or paid in defense of the Gulf Reflections Action. Finally, GREAT AMERICAN FIDELITY INSURANCE COMPANY requests this Court  tax the costs incurred in this matter in its favor and grant such other and further relief as this Court deems just and equitable.

## COUNT II

### DECLARATORY JUDGMENT AS TO THE SECOND POLICY ISSUED BY GREAT AMERICAN E&S TO JWR

40.     Great American E&S realleges and incorporates herein by reference the General Allegations.

41.     Based upon the foregoing Policy provisions, the occurrence of the claim circumstances as presented by the Gulf Reflections plaintiffs, and, the allegations in the Complaint, the Second Policy does not apply to the Gulf Reflections Action.   JWR has a contrary interpretation of the duties and responsibilities of Great American E&S under the Second Policy.

42.     Moreover, Great American E&S insists the Second Policy of insurance it issued to JWR does not provide coverage for defense or indemnity as the occurrence allegedly happened prior to June 4, 2009, before the Second Policy was issued effective June 4, 2009 through June 4, 2010.   JWR has a contrary interpretation of the duties and responsibilities of Great American E&S under the Second Policy.

43.     Additionally, if coverage is somehow triggered for this alleged claim under the Insuring Agreement of the First Policy, and, coverage is not otherwise excluded, only the First

22

KATZ, BARRON, SQUITERO, FAUST, FRIEDBERG, GRADY, ENGLISH & ALLEN, P.A.

100 N.E. THIRD AVENUE, SUITE 280, FT. LAUDERDALE, FLORIDA 33301-1176 • 954-522-3636 • 954-522-5119 FAX

Policy policy limits would apply and the most Great American Fidelity would be liable to pay for the sum of all Loss, Clean-Up Costs and Legal Expense would be $1,000,000 as shown in the Policy Declarations as the Each Pollution Condition Limit for Coverage A in the First Policy. Under this scenario, pursuant to the terms, covenants and conditions of the Second Policy, Great American E&S would have no coverage obligations under the Second Policy for the claim of JWR.  Again, JWR has a contrary interpretation of the duties and responsibilities of Great American E&S under the Second Policy.

44.    As a result of the dispute between Great American E&S and JWR, there is a controversy as to the rights, duties and status of Great American E&S regarding its obligations, duties and responsibilities under the Second Policy to defend JWR in the Action and indemnify JWR for loss, if any, it may incur as a result of the claims made in the Action.   Consequently, Great American E&S is entitled to a construction of the Second Policy of insurance and a determination of its rights under the Second Policy.

WHEREFORE, based on the above, the Plaintiff, GREAT AMERICAN E&S INSURANCE COMPANY, respectfully requests that this Court take jurisdiction of the subject matter and issue a Final Judgment which determines that pursuant to the Second Policy, GREAT AMERICAN E&S INSURANCE COMPANY was not and is not required to provide coverage for or to pay any portion of the loss, clean up costs or legal expense incurred by JWR CONSTRUCTION SERVICES, INC.  in the Gulf Reflections Action.  GREAT AMERICAN E&S INSURANCE COMPANY further requests that this Court enter final judgment against JWR CONSTRUCTION SERVICES, INC. for any and all settlement sums, judgments, attorneys fees, costs and expenses it incurred or paid in defense of the Gulf Reflections Action. Finally, GREAT

23

AMERICAN E&S INSURANCE COMPANY requests this Court  tax the costs incurred in this matter in its favor and grant such other and further relief as this Court deems just and equitable.

DATED _August 9, 2010_____.

 

 

                    KATZ BARRON SQUITERO FAUST
                    Attorneys for the Plaintiff
                    rcg@katzbarron.com
                    100 N.E. Third Avenue, Suite 280
                    Ft. Lauderdale, FL   33301
                    Telephone: (954) 522-3636; Fax: (954) 522-5119

                    By: _____
                        ROBERT C. GRADY
                      Florida Bar No.  330507

H:\LIB\DOCS\07137033\PLDG\K14535.DOC

24