**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-61423-CIV-HUCK/BANDSTRA**

GREAT AMERICAN FIDELITY
INSURANCE COMPANY, an
Ohio corporation, and GREAT
AMERICAN E&S INSURANCE
COMPANY, an Ohio corporation,

                Plaintiffs,

v.

JWR CONSTRUCTION SERVICES,
INC., a Florida corporation, GULF
REFLECTIONS CONDOMINIUM
ASSOCIATION, INC., *et al.*,

                Defendants.
_____/

## ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION

THIS MATTER comes before the Court on Plaintiffs Great American Fidelity Insurance Company's and Great American E&S Insurance Company's ("Great American") Motion for Reconsideration of the Order on the Cross-Motions for Summary Judgment on the Second Amended Complaint for Declaratory Judgment and Damages on the Duty to Defend Issues and Supporting Memorandum of Law (D.E. No. 175), filed August 8, 2012. The Court has reviewed the parties' submissions, the relevant legal authorities, and is otherwise duly advised. For the reasons set forth below, the Plaintiffs' Motion is denied.

### I.      BACKGROUND

This case involves yet another dispute between an insurer and insured in which both parties seek a declaration as to whether the insurer has a duty to defend the insured in a separate lawsuit. Because this case is on its second layer of review, the Court assumes the parties' familiarity with the facts.

The insured, JWR Construction Services ("JWR"), was formerly the general contractor for a condominium project called the Gulf Reflections Condominium ("Gulf Reflections"). *See* Order on Cross-Motions for Summary Judgment 3 (D.E. No. 164), filed April 9, 2012 ("Op."). During construction, JWR noticed the Chinese drywall used to construct the units was defective and

contacted its insurer, Great American, to notify it that a lawsuit may be forthcoming.  *See id.*  JWR's prudence proved well founded: about six months later a class action complaint was filed against JWR in Florida state court on behalf of a group of individuals who owned units in Gulf Reflections.  *See id.*

Once the lawsuit was formally filed, JWR called upon Great America to defend it against the class action.  But Great American refused.  It claimed that the allegations contained in the Gulf Reflections class action came within an exclusion in JWR's insurance policy under which Great American is relieved from its duty to defend.  Both parties submitted cross-motions for summary judgment; Great American sought a declaration that it was not bound to defend JWR against the Gulf Reflections class action and JWR, of course, sought a declaration that Great American was bound.  The Court granted JWR's Motion for Summary Judgment and denied Great American's Motion.  Great American now asks the Court to reconsider its decision.  The Court declines its invitation.

## II.    DISCUSSION

Motions for reconsideration are granted only when (1) there is an intervening change in controlling law; (2) new evidence is available; or (3) there is a need to correct clear error or prevent manifest injustice.  *See, e.g., Williams v. Cruise Ships Catering & Service Int'l, N.V.*, 320 F. Supp. 2d 1347, 1357-58 (S.D. Fla. 2004) (outlining grounds for granting a motion for reconsideration).  Great American does not point to a change in the law or bring forth new evidence.  Great American instead relies on the third ground for granting a motion for reconsideration and contends that the Court clearly erred in holding that Great American is not relieved of its duty to defend JWR against the Gulf Reflections class action.  Great American highlights three instances in which it believes the Court committed clear error.  The Court addresses each claim of error in the order it is raised.

First, Great American contends that the Court misinterpreted New York law in requiring that Great American show that "there is no possible factual or legal basis upon which it may eventually be held obligated to indemnify JWR."  Mot. for Recons. 10 (citing Op. at 16).  Great American insists this duty triggers only when "some claims are covered and some claims are not," *id.* at 18.  And thus because "[h]ere all of the allegations, even if proven, trigger the exclusions and negate a duty to defend," *id.* at 7, Great American contends that it need not show that there is no possible factual or legal basis upon which it will be obligated to indemnify JWR.

Great American is incorrect.  New York's highest court instructs that for an insurer to be "relieved of its duty to defend on the basis of a policy exclusion, the insurer bears the heavy burden of demonstrating that . . . there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Frontier Insulation Contractors, Inc. v. Merchants Mutual Ins. Co.*, 690 N.E.2d 866, 868-69 (N.Y. 1997). Contrary to Great American's contention, Mot. for Recons. 18, the *Frontier* Court made no indication that this requirement triggers only when the underlying lawsuit contains covered and uncovered claims.  The court instead issued a blanket rule: "[t]he duty to defend exists unless there is no possible factual or legal basis on which the insurer will be obligated to indemnify the insured." *Napoli, Keiser & Bern, LLP v. Westport Ins. Co.*, 295 F. Supp. 2d 335, 338 (S.D.N.Y. 2003) (citation and internal quotation marks omitted).  Great American suggests this cannot be right because, if it is, then insurers like Great American would have to "anticipate, investigate, and[] disprove an infinite number of possible factual and legal scenarios . . . ."  Mot. for Recons. 19.  This may be true in another case, but it is not here.  And, in any event, that the rule sweeps broadly should not surprise Great American in light of the fact under New York law "[t]he duty to defend is extremely broad." *Cowan v. Codelia, P.C.*, No. 98 Civ. 5548 (JGK), 1999 WL 1029729, at * 5 (S.D.N.Y. Nov. 10, 1999).

Great American advances the related argument that the Court clearly erred in requiring it to "show[] an absence of actual knowledge of facts establishing a reasonable possibility of coverage." Op. at 16.  Great American observes correctly that this burden triggers only when initial coverage is in dispute, and here Great American conceded coverage.  *See* Mot. for Recons. 16.  But because this burden is decidedly easier to satisfy than having to show "no *possible* factual or legal basis [exists] upon which the insurer may eventually be [] obligated to indemnify the insured," *Frontier*, 690 N.E.2d at 868-69 (emphasis added), whether the Court imposed this added burden on Great American had no effect on the outcome of the case.  That is, even if Great American had demonstrated that it had no actual knowledge of facts establishing a reasonable possibility of coverage it still had to show that no *possible* factual basis exists upon which it might be obligated to indemnify JWR — a burden Great American did not carry.

Great American next faults the Court for holding that neither of the two policy exclusions, under which it sought refuge, applied.  The first exclusion relieves Great American of its duty to defend when the basis of the lawsuit is "faulty workmanship, construction, [or] installation . . .

3

performed in whole or in part by an [insured] (the "Faulty Workmanship/Own Work Exclusion)." Op. at 16. The Court held that this exclusion did not apply because JWR did not construct or install the drywall that triggered the Gulf Reflections class action; rather, its subcontractor did. *See* Op. at 22. Great American contends the Court's construction of the term "insured" was unduly narrow and because it did not include JWR's subcontractors was clearly erroneous. *See* Mot. for Recons. 21. The Court disagrees. A number of rules govern the interpretation of exclusions contained in policy agreements; namely, that they are to be "accorded a strict and narrow construction." *Farm Family Casualty Ins. Co. v. Habitat Revival, LLC*, 91 A.D.3d 903, 904 (N.Y. 2d App. Div. 2012) (citation omitted). And, of course, any ambiguities are to be construed against the drafter — here, Great American. *See id.* (citation omitted). With these principles in the background, the Court's interpretation of "insured" to exclude JWR's subcontractors was not clearly erroneous.[1]

The second exclusion under which Great American sought to be relieved of its duty to defend provides, in relevant part, that JWR is not covered for any legal expense "based upon or arising out of goods or products manufactured, sold, handled, [or] distributed by the [insured] (the "Products Liability Exclusion")." Op. at 23. The Court held that this exclusion, too, did not apply because even though the underlying class action sought to hold JWR liable for defects caused by a "good or product," *i.e.*, Chinese drywall, JWR neither sold nor distributed the drywall, its subcontractor did. And by its plain terms the exclusion is triggered only via conduct undertaken by JWR (the insured), not its subcontractors.

Great American asserts this underinclusive definition of the term "insured" defies reality, *see* Mot. for Recons. 20, because everyone knows that general contractors "provide the means and method of construction, coordination, oversight for construction, and, the building materials." *Id.* While Great American's contention regarding the services general contractors provide may be true in the generality of cases, the Court here is concerned only with whether JWR — the insured — "manufactured, sold, handled, [or] distributed" the drywall that triggered the underlying litigation. Under a strict and narrow construction of what it means to manufacture,

---

[1] Great American asserts that "[i]t is undisputed that [the] Court [] definitively determined the allegations in the Gulf Reflections Action fall within the two relevant exclusion provisions of the Great American Policy." Mot. for Recons. 19 (citing Op. at 21-22, 25). This is incorrect. The Court said only that it would <u>assume</u>," for purposes of argument, that the allegations in the underlying complaint "implicated [the] exclusion" in applying the first part of the test the *Frontier* Court espoused — whether "the allegations of the complaint cast the pleadings wholly within [the] exclusion," *Frontier*, 690 N.E.2d at 868. *See* Op. at 21-22.

sell, handle, or distribute drywall, the Court found that JWR was not involved in any of these activities.[2]  In sum, the Court can discern no error — much less clear error — in its construction of the policy exclusions.

### III.    CONCLUSION

For the reasons stated above, it is hereby

ORDERED that Great American's Motion for Reconsideration is DENIED.

DONE AND ORDERED in Chambers, Miami, Florida, November 2, 2012.

_____

Paul C. Huck
United States District Judge

Copies furnished to:
All counsel of record

---

[2]  The Court finds further support for this interpretation from the doctrine of *noscitur a sociis*, which counsels that "words should be understood by the company they keep."  *Microsoft Corp. v. Comm'r of Internal Revenue*, 311 F.3d 1178, 1184 (9th Cir. 2002) (citation omitted).  That the term "handled" is situated alongside the terms "manufactured, sold, and distributed" indicates that it "should be given its commercial connotation, and construed to refer to products in which the insured trades or deals."  *Frontier*, 690 N.E.2d at 870.  And no one here disputes that JWR neither trades or deals with drywall.